

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| EAG | *271 Cadman Plaza East* |
| F. #2018R01021 | *Brooklyn, New York 11201* |

March 9, 2021

<u>By ECF</u>

The Honorable I. Leo Glasser
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Benjamin Bifalco
             <u>Criminal Docket No. 19-444 (ILG)</u>

Dear Judge Glasser:

      The government submits this letter in connection with the sentencing proceeding scheduled for March 11, 2021 and in brief response to the defendant Benjamin Bifalco's sentencing memorandum, dated October 7, 2020, in which the defendant seeks a sentence of a one-year term of probation.

I.     <u>Sentencing by Videoconferencing Is Warranted</u>

      As set forth below, the government submits that now "specific reasons" exist that the sentencing "cannot be further delayed without serious harm to the interests of justice," as required by the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (the "CARES Act"). Accordingly, the government does not object to proceeding by video conferencing and respectfully submits that the Court record its reasons at the proceeding scheduled for March 11, 2021.

      As a general matter, sentencings must take place in person. The CARES Act provides a limited exception to that rule. Specifically, pursuant to Section 15002(b)(2) and (4) of that law, a sentencing proceeding "may be conducted by video teleconference, or by telephone conference if video teleconferencing is not reasonably available," if:

          (1)    "the Judicial Conference of the United States finds that emergency conditions due to the national emergency declared by the President

    under the National Emergencies Act with respect to the Coronavirus Disease 2019 (COVID-19) will materially affect the functioning of either the Federal courts generally or a particular district court of the United States";

  (2)  the Chief Judge "specifically finds . . . that felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety";

  (3)  "the district judge in a particular case finds for specific reasons that the . . . sentencing in that case cannot be further delayed without serious harm to the interests of justice"; and

  (4)  the defendant consents to proceeding by video conference "after consultation with counsel."

See generally United States v. Harry, No. 19-CR-535 (DLI), 2020 WL 1528000, at *2 (E.D.N.Y. Mar. 31, 2020) (discussing the CARES Act's requirements for sentencings).

  On March 29, 2020, the Judicial Conference found that COVID-19 would materially affect the functioning of the federal courts generally. See Judiciary Authorizes Video/Audio Access During COVID-19 Pandemic, https://www.uscourts.gov/news/2020/03/31/judiciary-authorizes-videoaudio-access-during-covid-19-pandemic; see also Harry, 2020 WL 1528000, at *2 ("On March 29, 2020, the JCUS made the appropriate findings under the CARES Act."). On March 30, 2020, former Chief Judge Roslynn R. Mauskopf issued Administrative Order No. 2020-13, which found that sentencing proceedings "cannot be conducted in person without seriously jeopardizing public health and safety." See Admin. Order 2020-13 ¶ 2 (E.D.N.Y. Mar. 30, 2020). On September 21, 2020, former Chief Judge Mauskopf issued Administrative Order No. 2020-13-2, extending her findings for another 90 days. See Admin. Order 2020-13-2 ¶ 2 (E.D.N.Y. Sept. 21, 2020). On December 21, 2020, former Chief Judge Mauskopf issued Administrative Order No. 2020-13-3, extending her findings for another 90 days. See Admin. Order 2020-13-3 ¶ 2 (E.D.N.Y. Dec. 21, 2020). On February 27, 2021, Chief Judge Margo K. Brodie issued Administrative Order No. 2021-4, extending the prior findings until March 26, 2021. See Admin. Order 2021-4 (E.D.N.Y. Feb. 27, 2021). This latest administrative order also directed that "[t]o the maximum extent possible, . . . sentencings[] . . . should be conducted remotely pursuant to the CARES Act and Administrative Order No. 2020-13-2" although such proceedings for non-incarcerated defendants may occur in person subject to certain limitations. Thus, the first two CARES Act requirements are satisfied.

  The government also does not object that the third requirement — that "specific reasons" exist that the sentencing in this case "cannot be further delayed without serious harm to the interests of justice" — is satisfied under the facts of this particular case at this particular time based on representations by defense counsel. Although the defendant is not currently in custody and there is no risk that adjourning the sentencing proceeding would

prejudice the defendant by causing him to serve more time imprisoned than he otherwise would, the government submits that there remain specific reasons to avoid a further delay. Specifically, according to the PSR, the defendant is eligible to be sentenced to a term of probation, and counsel has requested a one-year term of probation. Given that the defendant has now served almost 18 months on pretrial supervision, more than a year of which has elapsed since the date of the defendant's guilty plea, the defendant could ultimately effectively serve a harsher sentence that he would otherwise serve. Moreover, the defendant has expressed an interest in applying to law school and accordingly, the Court's determination as to whether the defendant will be sentenced to a term of imprisonment and the duration of any term of probation or supervised release will likely affect the timing of his application process.

II.  The Government Does Not Take a Position as to Where Within
     The Guidelines Range the Defendant Should Be Sentenced

Consistent with the terms of the plea agreement between the defendant and the government, the government does not take a position where within the Guidelines range of 0 to 6 months' imprisonment the defendant should be sentenced.

III. A Fine Within the Guidelines Range Is Warranted

The government respectfully submits that a fine is warranted. The government agrees with the Probation Department that the Guidelines provide for a fine between $2,000 and $20,000. (PSR ¶ 50). Section 5E1.2(a) of the Guidelines provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." Although the Probation Department determined that the defendant does not currently have a means of paying a fine, the defendant has shown that he is capable of obtaining employment and therefore capable paying a fine within the range provided by the Guidelines range. At a minimum, the defendant has not met his burden of establishing that he is not likely to become able to pay any fine in the future. Accordingly, a fine is warranted in this case.

IV.  A Non-Association Prohibition Is Warranted

Finally, the government requests that as a condition of the defendant's term of probation or supervised release, should one be imposed, the Court prohibit the defendant from associating with members or associates of organized crime. The government's wiretap investigation revealed that on multiple occasions, the defendant discussed criminal activity with Joseph Amato, Jr., an associate of the Colombo organized family of La Cosa Nostra (the "Colombo family"), and the son of Joseph Amato, a powerful captain in the Colombo family, and acted as though he was engaged in criminal activity. First, as detailed in the PSR, the defendant advised Amato, Jr., of his commission of the charged crime (i.e., attempted sports bribery) and encouraged Amato, Jr., to place a bet on the game to be influenced and Amato, Jr., then passed along the information to another co-defendant. Second, in several telephone calls in late December 2018, the defendant sought to collect money, apparently on behalf of a

3

third party, from Amato, Jr., which the defendant indicated was owed by Amato, Jr., and individuals close to Amato, Jr., including co-defendant John Cahill, who is another Colombo family associate. (The circumstances of those particular debts are not currently known.) Finally, the defendant described other potential criminal activity to Amato Jr. Specifically, on January 17, 2019 at 8:42 p.m. (JR #6570), the defendant called Amato, Jr., and had the following conversation:

> AMATO JR.: Yo call me quick, it's super important, like (UI).
>
> BIFALCO: (UI) Yo bro, I got my fucking boy waiting in the Hilton parking lot for something that I'm getting and nobody's here (laughs).
>
> AMATO JR.: Yeah, leave him in, leave him in the parking lot, hanging out.
>
> BIFALCO: Yeah, he's gonna be in the parking lot for a fucking while because nobody's here.
>
> AMATO JR.: At the Hilton?
>
> BIFALCO: Yeah bro.
>
> AMATO JR.: Your boy had to stop there first?
>
> BIFALCO: No, he's there, that's where he wants me to meet him, he thinks South Avenue is too hot.
>
> AMATO JR.: So where's he, I don't understand, why are you at the spot then?
>
> BIFALCO: Because I'm getting my shoes here, and going to the Hilton to give him his shoes.
>
> AMATO JR.: Ah
>
> BIFALCO: You get it?

Although it remains unclear what the defendant meant by "shoes" or the nature of the meeting, it is evident that it was criminal in nature given the context of the conversation. For example, when the defendant said, "that's where he wants me to meet him, he thinks South Avenue is too hot," he meant that his "boy" wanted to meet him at a Hilton parking lot, which is located at 1100 South Avenue on Staten Island, rather than on South Avenue because there was too much of a law enforcement presence on South Avenue ("too hot"). Furthermore, when the defendant said that he was "getting my shoes" at the "spot" and then "going to the Hilton to give him his shoes," the defendant appeared to be using "shoes" as a code word, and to make sure Amato, Jr., understood, he said, "You get it?"

4

Accordingly, a term of probation or supervised release prohibiting the defendant from associating with members or associates of organized crime is warranted.

<pre>
                                        Respectfully submitted,

                                        SETH D. DUCHARME
                                        Acting United States Attorney

                                By:     /s/
                                        Elizabeth Geddes
                                        Assistant U.S. Attorney
                                        (718) 254-6430
</pre>

cc:     Vincent Martinelli, Esq. (by ECF)